IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| HALLIE COLLINS, | ) |
| *Pro se* Plaintiff, | ) |
| | ) |
| v. | )   7:22-cv-1139-LSC |
| | ) |
| PECO FOODS, INC., | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OF OPINION

Plaintiff Hallie Collins ("Collins") brings this action against her former employer, Peco Foods ("Peco"). Collins asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the American with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 ("ADA"); and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 674 ("ADEA"). Specifically, Collins asserts claims of sex-based discrimination, substantive hostile work environment sexual harassment, disability discrimination, age-based discrimination, retaliation under Title VII, and retaliation under the ADA.

Peco has moved for summary judgment. For the reasons explained below, the Court dismisses this action. Alternatively, summary judgment is due to be granted.

1

## I.   FACTS[1]

Peco is a poultry processing and packaging company. (Doc. 12-1 ¶ 1; Doc. 13 at 3 ¶ 1.) Its company policies prohibit discrimination and retaliation. (Doc. 12-1 ¶ 2; Doc 12-2.) The Anti-Harassment Policy specifically instructs employees to report harassment and lays out a procedure for doing so. (Doc. 12-2.) Collins received a copy of this Policy and signed an acknowledgement of it. (Doc. 12-3.)

Collins initially began working at Peco as a temporary contract laborer for Onin Staffing in May 2021. (*Id.* ¶ 3 n.2.) Collins then worked as a full-time employee at Peco from August 2021 to October 2021. (Doc. 13 ¶ 2.) While she initially worked as a file scanner in Peco's human resources department, she later transitioned to Peco's on-site medical department. (Doc. 12-1 ¶ 3.) In this new role, "Collins' responsibilities consisted primarily of collecting and maintaining confidential information (keeping track of attendance and taking excuses), and contacting 911 in the event that a serious injury or an emergency situation resulted." (*Id.*) Her supervisors were Safety & Occupational Health Manager, Nurse Darnell Hill ("Hill"); Director of Human Resources, Stephen Johnston ("Johnston"); and Plant Manager, Clarence Lumpkin. (*Id.*)

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Around September 2021,[2] Collins learned that there was a workplace bet at the plant about who would have sex with her first. (Doc. 12-13 at 5.) Collins subsequently submitted a letter to Johnston that complained of "false accusations and rumors circulating accompanied with sexual harassment." (Doc 12-5.) Collins claimed that Hill had started the rumors, and she also complained of schedule changing, improper training, and a lack of information pertaining to her job. (*Id.*)

Johnston responded to Collins's letter by immediately opening an investigation and meeting with Collins. (Doc. 12-1 ¶ 4.) In that meeting, Collins stated that Hill had told her that another employee, Fadeldrick Marshall ("Marshall"), had made the bet. (*Id.*) Johnston asked Collins what she would like done about the matter, and she indicated that she "wanted the incident investigated consistent with Peco's policy." (*Id.*)

Johnston continued his investigation, interviewing other employees that Collins had identified as witnesses, including Marshall, Hill, and Shamiya Beckham. (*Id.* ¶ 5.) Hill claimed that he had overheard Marshall making a comment about the bet and then warned Collins. (*Id.*) Beckham, who was present during the conversation between Collins and Hill, claimed that Collins simply "blew it off" and began avoiding Marshall. (*Id.*) Beckham also told Johnston that she heard Collins

---

[2] In her EEOC charge, Collins states that she learned about the bet in September 2021. But in a later meeting with Johnston, she reported learning about the bet in July 2021. (Doc. 12-1 ¶ 4.) Making all inferences in Collins's favor, the Court assumes the September 2021 date.

confront Marshall about the bet and that Marshall blamed Hill for starting the bet. (*Id.*) In Johnston's interview with Marshall, Marshall claimed that he knew nothing about the bet prior to being confronted by Collins. (*Id.*)

After conducting these interviews and examining the information before him, Johnston "concluded that he could not determine the veracity of Collins' claims against Hill." (*Id.* ¶ 6; Doc. 12-7.) Hill had no prior disciplinary issues. (Doc. 12-1 ¶ 5.)[3] Johnston instructed Hill and Marshall "to be more careful with their words," but he did not believe that he could discipline anyone without better proof of what had occurred. (Doc. 12-7.) Johnston informed Collins about the results of his investigation and also discussed the duties of her job with her. (Doc. 12-1 ¶ 8.) From Johnston's perspective, "Collins appeared satisfied." (*Id.*)

For the entirety of her full-time employment, Collins worked under a probationary period. (*Id.* ¶ 9.) As explained in Peco's orientation documents, which were provided to Collins: "Probationary employees can be discharged if they have a poor attendance record or for any other reason (examples: poor job performance, late from breaks, and safety violations). If a probationary employee reaches (4) occurrences during his/her probationary period, he/she will be discharged." (Doc. 12-4, at 1; Doc 12 ¶ 6.)

---

[3] Regardless, in her EEOC claim, Collins claims that Hill was "known for sexual misconduct" and had previously started a rumor about a night nurse, Stacey Locke. (Doc. 12-13 at 5.)

Peco terminated Collins in October 2021, claiming it terminated her for violating these policies. (Doc. 12-1 ¶ 10.) Specifically, Peco claims that Collins was terminated for taking unauthorized breaks in her car prior to clocking out for the evening. (*Id.*) Collins was first seen taking these breaks by Linda Williams, Peco's night shift HR Clerk, and night nurse, Stacey Locke. (*Id.* ¶ 9; Doc. 12-9.) Johnston then reviewed security footage and determined that within a two-week period, Collins spent over 4 hours taking unauthorized breaks in her car. (Doc. 12-1 ¶ 10.). Collins did not dispute this ultimate finding (Doc. 12-12) but claimed that this was a common practice among Peco employees (Doc. 12-13 at 7–8). She has specifically named Hill and James Little[4] as other employees who would leave the premises during work hours. (*Id.*)

Collins filed a claim with the Equal Employment Opportunity Commission ("EEOC") in December 2021, claiming she was discriminated and retaliated against in violation of Title VII and the ADA. (Doc. 12-13 at 1). She believes that she was ultimately terminated as retaliation for reporting sexual harassment. (Doc. 12-13 at 8.) She also believes that she was retaliated against because, after reporting the

---

[4] Little is a non-probationary employee and union member covered by its collective bargaining agreement with Peco. (Doc. 13 at 12 n.7.)

harassment, her work environment became hostile,[5] her work was more heavily scrutinized, and Hill withheld training. (Doc. 12-13 at 6, 8.) Regarding her ADA claim, Collins stated in her charge that she "deal[s] with extreme anxiety" and asked Peco to accommodate her by "swiftly" handling her harassment claim. (Doc. 12-13 at 8.) She believes she was terminated due to her disability and retaliated against for requesting an accommodation. (*Id.*) It is worth noting that when she began her employment, Collins denied having a disability. (Doc. 12-14). The EEOC ultimately determined that it could not find any discrimination or violation of federal law and issued a Determination and Notice of Rights. (Doc. 12-16)

Collins never filed an EEOC claim regarding any violation of the ADEA. The only evidence in the record regarding Collins's age is her initial EEOC charge, which states that she was born 1995. (Doc. 12-13 at 1.)

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the

---

[5] In the EEOC charge, Collins claims that she was threatened by Hill and accosted by Porsha Smith. (Doc. 12-13 at 6.) The Smith incident was investigated by Johnston, who did not see any connection between the incident and Collins's complaint against Hill. (Doc. 12-1 ¶ 7.)

nonmoving party's favor." *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). The Court does not weigh the evidence as fact-finder; rather, it must "determin[e] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

## III.   ANALYSIS

### A. This matter is due to be dismissed because Collins has failed to prosecute it.

Under Federal Rule of Civil Procedure 41(b), "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Further, "A district court has the inherent authority to manage its docket and thus may dismiss an action *sua sponte* for failure to prosecute." *Nail v. Ollado*, 737 F. App'x 960, 962 (11th Cir. 2018) (citing *Betty K Agencies, Ltd. V. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005)).

Collins has undoubtedly failed to prosecute this case. To date, the only actions that Collins has taken in this case are filing a complaint and participating in a Rule 26(f) meeting. She has never responded to Peco's Motion for Summary Judgment, which was filed on July, 13, 2023, despite the Court giving her ample opportunity

to do so.[6] Collins also failed to respond to Peco's discovery requests. Therefore, due to Collins's failure to prosecute, the Court dismisses this matter.

**B. Alternatively, Peco is entitled to summary judgment because there is no genuine dispute of material fact and Peco is entitled to judgment as a matter of law.**

1. *Title VII Sex-Based Discrimination Claim*

Title VII prohibits employers from discriminating against their employees on the basis of sex. 42 U.S.C. § 2000e-2(a). Title VII discrimination claims "are typically categorized as either mixed-motive or single-motive." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1236 (11th Cir. 2016). An employee asserts a single-motive theory by "showing that bias was the true reason for the adverse action." *Quigg*, 814 F.3d at 1236. An employee asserts a mixed-motive theory by showing that sex was a "'motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Id.* (quoting 42 U.S.C. § 2000e-2(m)). "[A] plaintiff cannot make only a 'passing reference to a mixed-motive theory' to sufficiently raise the issue." *Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127,

---

[6] The Court's Uniform Order requires parties to respond to motions for summary judgment within 21 days. (Doc. 8.) After Collins failed to respond, the Court issued an Order, stating that it would take Peco's Motion under consideration. (Doc. 14.) Before the Court ruled on Peco's Motion, Collins filed a Motion for Extension of Time on August 16, 2023. (Doc. 15.) In an abundance of caution, the Court then gave Collins a 15-day extension. (Doc. 16.) Collins still did not respond.

130 (11th Cir. 2019)[7] (quoting *Keaton v. Cobb Cty.*, No. 08–11220, 2009 WL 212097, at *10 (11th Cir. Jan. 30, 2009)) (explaining that the plaintiff had not raised a mixed-motive claim, in part because she did not plead or prove the issue). Here, Collins has not made even a passing reference to a mixed-motive theory. Regardless, Collins would not succeed under either theory.

Discrimination claims may be proven with either direct or circumstantial evidence. *Quigg*, 814 F.3d at 1235 (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–102 (2003)). The record contains no direct evidence that Peco discriminated against Collins, and so the Court evaluates whether there is sufficient circumstantial evidence.

When a plaintiff in a single-motive discrimination case relies on circumstantial evidence, the Court applies the *McDonnell Douglas* framework or the convincing mosaic standard. *Quigg*, 814 F.3d at 1238 n.7; *see Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1186 (11th Cir. 2019). Under the *McDonnell Douglas* framework, a plaintiff must first make a prima facie case of discrimination by showing that the plaintiff "(1) belongs to a protected class, (2) was subjected to an adverse employment action, (3) was qualified to perform the pertinent job; and (4) was treated less favorably by his employer than 'similarly situated' employees

---

[7] While opinions from the Federal Appendix are not binding on this Court, these opinions can be persuasive authority.

outside the protected class." *Ward v. Troup Cnty. Sch. Dist.*, 856 F. App'x 225, 228 (11th Cir. 2021) (first citing *Lewis*, 918 F.3d at 1220–21 (11th Cir. 2019) (en banc); and then citing *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004)). "Similarly situated" employees, called comparators, must be "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218. Under the convincing mosaic standard, a plaintiff may provide enough evidence for a jury to infer discrimination if the evidence shows "among other things, (1) 'suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (quoting *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)).

Peco argues that Collins has failed to make a prima facie case under *McDonnell Douglas* because she has not shown that she was treated less favorably than similarly situated male employees, and the Court agrees. Collins has admitted that she was "not subject to discrimination based on her gender." (Doc. 12-18 at 10 ¶ 5.) She has further admitted that she was not terminated due to her gender. (*Id.* at 11 ¶ 19.) Collins attempts to paint Hill and Little as "similarly situated" male employees who were treated better, but Hill and Little are not adequate comparators.

Hill was a supervisor who had permission to leave the premises to attend to his duties. (Doc. 13 at 12 n.7.) Little was a non-probationary employee not subject to Peco's probationary rules, and he is further protected by a collective bargaining agreement. (*Id.*) As such, neither Hill nor Little suffice as comparators. Collins has thus failed to meet her burden under the *McDonnell Douglas* framework.

Collins has similarly not established a discrimination claim under the convincing mosaic standard. Collins has not asserted the "bits and pieces" of evidence from which a convincing mosaic of discrimination could be constructed, she has not shown systematic better treatment of comparators, and she has not proven pretext. She admitted that she was not discriminated against. (Doc. 12-18 at 10 ¶ 5.) She admitted that she was terminated for cause (*Id.* ¶ 18), not due to gender (*Id.* ¶ 5.). Consequently, Collins does not succeed under a convincing mosaic theory.

Even if this Court were to take the great liberty of construing Collins's claim as a mixed-motive claim, she has still not satisfied this more lenient standard. Under a mixed-motive discrimination theory based on circumstantial evidence, a plaintiff has to offer "evidence sufficient to convince a jury (by a preponderance of the evidence) that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1239 (quoting *White v. Baxter Healthcare Corp.*, 533 F.2d 381, 400 (6th Cir. 2008)). As previously stated,

Collins has admitted that she was not discriminated against. (Doc. 12-18 at 10 ¶ 5.) Therefore, she has not met her burden in showing that her sex was a motivating factor in her termination or any other adverse employment action.

Because Hill has not offered sufficient evidence that she was discriminated against due to her gender, Peco is entitled to summary judgment on the Title VII sex-based discrimination claim.

> 2.  *Title VII Substantive Hostile Work Environment Sexual Harassment Claim*

Substantive hostile work environment claims under Title VII "require plaintiffs to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tonkyro v. Secretary, Dep't of Veterans Affs.*, 995 F.3d 828, 836–37 (11th Cir. 2021) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). For the work environment to be "sufficiently severe or pervasive," an "employer's actions 'must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive.'" *Tonkyro*, 995 F.3d at 837 (quoting *Miller*, 277 F.3d at 1276 (quotation marks omitted)). For the objective piece of the analysis, the Court evaluates "the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or

12

humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Tonkyro*, 995 F.3d at 837 (quoting *Miller*, 277 F.3d at 1276).

Crude jokes or the "mere utterance of an . . . ephithet which engenders offensive feelings in an employee" will not suffice in establishing a hostile work environment. *Tonkyro*, 995 F.3d at 837 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks omitted)); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (holding that a male supervisor's conduct fell "well short" of a hostile work environment when he told the female employee that he was "getting fired up," rubbed his hip against her hip, made a sniffing noise when looking at her groin, and constantly followed and stared at her).

Collins's claim fails to establish that she was subjectively or objectively subjected to a hostile work environment. From a subjective standpoint, Collins admits that she was never subjected to unwelcome sexual harassment. (Doc. 12-18 at 10 ¶ 6.) Further, as an objective matter, Collins has not shown a hostile work environment. Collins has alleged a single remark made by a supervisor, which Peco promptly investigated and took reasonable steps to correct. (Doc. 12-18 at 10 ¶ 10, 9.) While this remark may have been distasteful, it falls well short of the pervasive and offensive conduct that is required to establish a hostile work environment. As a result, Peco is entitled to summary judgment on this claim.

13

3.   *ADA Disability Discrimination Claim*

The Americans with Disabilities Act prohibits employers from discriminating against "qualified individuals" on the basis of disability. *See* 42 USC § 12112(a). To avoid summary judgment, in the absence of direct evidence of discrimination,[8] a plaintiff has the burden of establishing a prima facie case of discrimination, in which the plaintiff must show: "(1) [s]he is disabled; (2) [s]he is a qualified individual; and (3) [s]he was subject to unlawful discrimination because of h[er] disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007) (citing *Earl v. Mervyuns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000)). The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 USC § 12102(2). Discrimination can consist of failure to make a reasonable accommodation. *See Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998) (citing 42 USC § 12112(b)(5)(A)).

Collins has failed to make a prima facie case. She has admitted that she does not suffer from an actual impairment disability as defined by the ADA. (Doc. 12-18 at 11 ¶ 13.) There is no record of her having a disability, nor did Peco regard her as having a disability. (Doc. 12-14.) She has further admitted that Peco never

---

[8] The Record contains no direct evidence of disability discrimination.

discriminated against her by failing to make a reasonable accommodation. (Doc. 12-18 at 11 ¶ 14.) Therefore, because Collins has not shown that (a) she has a disability and (b) she was discriminated against, she has not established a claim for disability discrimination. Consequently, Peco is entitled to summary judgment on this claim.

### 4. *ADEA Age Discrimination Claim*

The Age Discrimination in Employment Act bars employers from discriminating against their employees due to age. Prior to filing a lawsuit, the ADEA requires a plaintiff to "exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC." *Smith v. Potter*, 310 F. App'x 307, 310 (11th Cir. 2009) (quoting *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004)). Upon filing a lawsuit, in the absence of direct evidence of discrimination,[9] a plaintiff must make a prima facie case of discrimination, showing "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment actions; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999).

---

[9] The Court notes that there is no direct evidence of age discrimination in the Record.

At the outset, Collins has failed to exhaust her administrative remedies because her original EEOC charge did not include any claim of age discrimination. (Doc. 12-13.; Doc. 12-18 at 11 ¶ 17.) But even further, Collins has not made a prima facie case of age discrimination. According to her EEOC charge, Collins was born in 1995, meaning she is between 27 to 28 years old. (Doc. 12-13 at 1.) Additionally, she has admitted that she was not terminated due to her age (Doc. 12-18 at 11 ¶ 19), and she has pointed to no substantially younger person that has filled her position. Accordingly, Peco is entitled to summary judgment on the ADEA claim.

### 5.   *Title VII Retaliation Claim*

Title VII retaliation claims can be based on discrete acts, like termination, or the creation of a hostile work environment. *See Tonkyro*, 995 F.3d at 836. It appears that Collins has asserted a retaliation claim based on both the discrete act of her termination and the creation of a hostile work environment, so the Court addresses each theory.

In the absence of direct evidence,[10] Title VII retaliation claims require a plaintiff to make a prima facie case, showing that "(1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between the two events." *Pennington v. City of Huntsville*,

---

[10] The Record contains no direct evidence of Title VII retaliation.

261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). The type of employer conduct that is actionable is "that which has a materially adverse effect on the plaintiff." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). This means the employer's action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974 (quoting *Burlington*, 548 U.S. at 68).

If a plaintiff makes a prima facie case, the burden then shifts to the defendant to proffer a "legitimate, non-retaliatory reason for the challenged employment action." *Pennington*, 261 F.3d at 1266 (first citing *Olmsted*, 141 F.3d at 1460; and then citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)). If the defendant makes this showing, the burden shifts back to the plaintiff to show, by a preponderance of evidence, that the employer's reason for taking the action "is a pretext for prohibited, retaliatory conduct." *Pennington*, 261 F.3d at 1266 (citing *Olmsted*, 141 F.3d at 1460). "The inquiry into pretext requires the court to determine, in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Crawford*, 529 F.3d at 976 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and quotations omitted)).

Turning first to Collin's discrete act retaliation theory, Peco does not challenge that Collins was engaged in statutorily protected expression or that Collins experienced an adverse employment action. Rather, Peco argues that Collins has not proven causation. The Court rejects that argument. "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing *Olmsted*, 141 F.3d at 1460). Even a one-month period between the protected expression and the adverse action can give rise to an inference of causation. *See Higdon*, 393 F.3d at 1220 (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)). That is exactly the case here. Collins first raised concerns of sexual harassment in September 2021 (Doc. 12-13 at 5), and she was subsequently terminated in October 2021 (Doc. 12-1 ¶ 10). Because there was only one month between Collins making her complaint and her termination, Collins has shown causation and therefore made a prima facie case.

It is equally clear that Peco has provided a legitimate, non-retaliatory reason for Collins's termination. Peco has asserted that Collins was terminated for failing her probationary period, specifically for taking over four hours of unauthorized breaks in her car prior to clocking out for the day. (Doc. 12-1 ¶ 10.). Collins did not

dispute that she took these breaks. (Doc. 12-12.) Consequently, the burden then shifted to Collins to prove that Peco's proffered reason was pretextual.

Collins did not meet her burden. She has admitted that she was terminated for cause (Doc. 12-18 at 11 ¶ 18), not for reporting alleged harassing behavior (Doc. 12-18 at 11 ¶ 12). It is undisputed that Peco terminated Collins solely due to her taking unauthorized breaks. (Doc. 13 at 11 ¶ 49). While Collins believes that her breaks were not a good enough reason for her termination, "'a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.'" *Pennington*, 261 F.3d at 1267 (quoting *Combs*, 106 F.3d at 1543). For "federal courts do not sit to second-guess the business judgment of employers." *Combs*, 106 F.3d at 1543. Peco determined that failing the probationary period was grounds for Collins's termination, as many other employers undoubtedly would. The Court will not disturb this business judgment. Therefore, as Collins has not shown pretext, her discrete act retaliation claim fails.

Now to the hostile work environment retaliation theory. Again, Collins clearly engaged in statutorily protected activity when she reported Hill's alleged behavior, and causation would clearly be satisfied due to the close temporal proximity between Collins's report and the creation of a hostile work environment. But the problem for Collins remains that she was not subjected to a hostile work environment. Unlike in

a substantive hostile work environment claim, where a plaintiff must show that the workplace is "severe or pervasive," a plaintiff in a retaliatory hostile work environment claim need only show that the employer's conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974 (quoting *Burlington*, 548 U.S. at 68). Regardless, Collins has not shown a hostile work environment, even under this more lenient standard. Collins admits that Peco used reasonable care to prevent and correct any alleged harassing behavior towards her. (Doc. 12-18 at 10 ¶ 9.) Additionally, the record shows that Johnston promptly investigated her complaint, counseled those involved to be more careful with their words, and further explained her job responsibilities. (Doc. 12-1.) Collins appeared satisfied with this result. (Doc. 12-1 ¶ 8.) The incident with Porsha Smith, in which Johnston determined that Collins took offense to Smith being in a place she was authorized to be, was determined to be entirely unrelated to Collins's report. (*Id.* ¶ 7.) Rather, it was not until after Collins was terminated for failing her probationary period that she raised additional complaints of a hostile work environment in her EEOC charge. (Doc. 12-1 ¶ 10; Doc. 12-13.) For these reasons, Collins has failed to make a prima facie case of retaliation through a hostile work environment.

Because Colllins has not shown retaliation through either her termination or the creation of a hostile work environment, her Title VII retaliation claim is due to be dismissed.

6.   *ADA Retaliation Claim*

As with a Title VII retaliation claim, a plaintiff asserting a retaliation claim under the ADA, in the absence of direct evidence,[11] must show: "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)). In this context, "statutorily protected expression" may be a request for a reasonable accommodation. *See Frazier-White*, 818 F.3d at 1258.

Even if this Court assumes that the plaintiff made this showing, the burden shifts to the defendant to show that the reason behind their conduct was not retaliatory. *See Wolfsy v. Palmshores Ret. Cmty.*, 285 F. App'x 631, 634 (11th Cir. 2008) (citing *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002)). Upon that showing, the burden shifts back to the plaintiff to show pretext. *See Wolfsy*, 285 F. App'x at 634 (citing *Brooks v. County of Com'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)).

---

[11] There is no direct evidence of ADA retaliation.

Here, making all inferences in her favor, Collins has made a prima facie case. She has shown that she 1) engaged in statutorily protected expression when she requested a reasonable accommodation[12]; 2) she suffered an adverse employment action when she was terminated; and 3) there was a causal link, due to the short time between the two. When the burden shifted to Peco, Peco provided a valid reason for Collin's termination. Specifically, Peco explained that Collins was terminated for failing her probationary period. (Doc. 12-1 ¶ 10.). The burden was then on Collins to show pretext, which she did not and could not do. It is undisputed that she was terminated for cause after failing her probationary period. (Doc. 12-18 at 11 ¶ 15.) Further, Collins has admitted that she has not suffered from any adverse employment action because of her disability. (*Id.*) Therefore, Collins's ADA retaliation claim fails.

## IV.   CONCLUSION

For the reasons discussed above, the Court dismisses this action. Alternatively, Peco's Motion for Summary Judgment is due to be granted. The Court will enter an Order consistent with this Memorandum of Opinion.

---

[12] The Court assumes, for purposes of this Opinion, that requesting a swift investigation is a "reasonable accommodation."

**DONE** and **ORDERED** on September 22, 2023.

_____
L. Scott Coogler
United States District Judge

215755